UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CLEOTIS L. JOHNSON,

        Plaintiff,

v.

SHERRY L. NEWCOMB et al.,

        Defendants.
_____/

Case No. 2:19-cv-93

Honorable Gordon J. Quist

# **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Biggers, Bellanger, Gurnoe, Banks, Firth, Pruitt, Horton, Young, Savoie, Durant, and Blemke.

**Discussion**

I.       Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officers Sherry L. Newcomb and H. Anderson, Lieutenant Unknown Biggers, Sergeants Unknown Bellanger, Unknown Gurnoe, and Unknown Banks, Food Service Employees Unknown Firth and Unknown Pruitt, Warden Connie Horton, Deputy Warden Unknown Young, Corrections Officer L. Webb, Food Service Employee Unknown Savoie, Hearing Investigator M. Durant, Chaplain Unknown Rink, Sergeant Unknown Blemke, and Corrections Officers W. Henderson and L. LaPonise (also referred to in the complaint as LaPonsie).

Plaintiff Cleotis L. Johnson arrived at URF on June 6, 2016. On November 25, 2018, Plaintiff began his Islamic morning prayer while he was on a break from his job in food service. Defendant Newcomb interrupted Plaintiff and ordered him to stop praying, stating "You Black Muslims are not allowed to pray in public, or in public buildings." Defendant Newcomb then ordered Plaintiff to leave food service. Plaintiff replied that he was allowed to pray on break as long as he did it quietly. Defendant Newcomb stated that she did not like it and ordered Plaintiff to leave the area. Plaintiff attempted to resolve the issue with his food service supervisors, Defendants Firth and Pruitt, who told Plaintiff that there was no talking to Defendant Newcomb. Defendants Firth and Pruitt stated that they could not go against Defendant Newcomb's decision because they feared she would retaliate against them. Plaintiff was laid in from his job for the remainder of the day for praying.

On November 26, 2018, Plaintiff was again ordered to leave food services by Defendant Newcomb for praying on his break. Defendants Biggers and Savoie refused to help Plaintiff with Defendant Newcomb. Plaintiff wrote a grievance on Defendant Newcomb, who told Plaintiff that she knew about the grievance and not to come back to work.

On November 26, 2018, Plaintiff filed a PREA (Prison Rape Elimination Act) complaint on Defendant Newcomb after she "used her personal sexual gender to harass [Plaintiff] who on video refused to give [her] his personal attention." Plaintiff claims that Defendant Newcomb's improper conduct toward him was covered up by Defendants Biggers, Blemke, and Bellanger. In retaliation for the grievance and PREA complaint, Defendant Newcomb wrote a false misconduct on Plaintiff for disobeying a direct order on November 26, 2018.

On November 27, 2018, Defendant Blemke reviewed the misconduct report with Plaintiff. On November 29, 2018, Defendant Biggers conducted a hearing on the misconduct and found Plaintiff guilty. Plaintiff states that Defendant Biggers violated MDOC policy in conducting the hearing because Defendant Biggers was present during the event and was personally involved. Plaintiff filed an administrative appeal. On November 30, 2018, Defendant Durant gave Plaintiff a sanction of six days loss of privileges. Plaintiff's appeal was denied on December 6, 2018, by Defendant Young.

On December 13, 2018, Defendants Anderson, LaPonise, and Webb searched Plaintiff's cell and took Plaintiff's tape player and Plaintiff's Tylenol and Senna, which had been given to him by URF Medical Services. When doing so, Defendant Anderson stated that Plaintiff should not have written grievances on Defendant Newcomb. Defendant Anderson further stated that if Plaintiff continued to write grievances, he would end up in segregation and would be denied food. Defendant Anderson told Plaintiff, "That's what we do to Muslims." Defendant Anderson

wrote another false misconduct on Plaintiff for substance abuse, stating that Plaintiff should not have written grievances on Defendant Newcomb. On December 14, 2018, Plaintiff was reviewed on the misconduct ticket. On December 15, 2018, Defendants Rink and Henderson incorrectly stated that Plaintiff was not allowed to pray while at work or while at yard. On December 17, 2018, Defendant Biggers reviewed Plaintiff on his grievance against Defendant Newcomb.

On December 18, 2018, Defendants Anderson and Webb falsified a class 3 misconduct on Plaintiff which accused him of altering his tape player. In addition, Defendants Anderson and LaPonise took Plaintiff's prescribed Tylenol and Senna in retaliation for Plaintiff's grievances against Defendants Anderson and Newcomb. Plaintiff claims that Defendants Horton, Bellanger, and Biggers improperly denied Plaintiff's grievances in order to protect their co-workers.

Plaintiff claims that Defendants retaliated against him and prevented him from practicing his religion. Plaintiff also claims that Defendants acted with deliberate indifference when they took his Tylenol and Senna, and that they discriminated against him on the basis of his religious beliefs. Plaintiff seeks declaratory and injunctive relief, as well as damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially the Court notes that it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that

5

demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendants Gurnoe and Banks in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Therefore, Defendants Gurnoe and Banks are properly dismissed.

Plaintiff fails to make specific factual allegations against Defendants Horton and Bellanger, other than his claim that they failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their

6

subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Horton and Bellanger engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

In addition, Plaintiff's only claims against Defendant food service employees Firth, Pruitt, and Savoie are that they would not intervene with Defendant Newcomb on Plaintiff's behalf. As noted above, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff fails to allege that Firth, Pruitt, and Savoie personally engaged in any conduct which violated his rights. Therefore, they are properly dismissed.

Plaintiff makes a conclusory claim that Defendants Young, Durant, Biggers, and Blemke retaliated against him when they improperly handled the review and appeal of his misconduct conviction. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en

7

banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails to allege any facts showing that Defendants Young, Durant, Biggers, and Blemke had a retaliatory motive. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

> Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich., Jan. 16, 2010). Because Plaintiff does not allege any facts in support of his assertion that Defendants Young, Durant, Biggers, and Blemke were motivated by a desire to retaliate against him, his claims against them are properly dismissed.

Plaintiff also appears to be asserting that the misconduct tickets he received violated his Fourteenth Amendment right to procedural due process. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, contrary to the assertion in his complaint, Plaintiff should not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct convictions.

Even if Plaintiff was convicted of Class I misconducts, he fails to state a due process claim. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did

9

not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

10

disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin*, 515 U.S. at 472; *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails). Plaintiff has not identified any significant deprivation arising from his misconduct convictions. Accordingly, he fails to state a viable due process claim with regard to any of his misconduct convictions.

With regard to Plaintiff's state law claims against Defendants Biggers, Bellanger, Gurnoe, Banks, Firth, Pruitt, Horton, Young, Savoie, Durant, and Blemke, claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against

needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction with regard to parties where all federal claims have been dismissed. Accordingly, Plaintiff's state-law claims against Defendants Biggers, Bellanger, Gurnoe, Banks, Firth, Pruitt, Horton, Young, Savoie, Durant, and Blemke will be dismissed without prejudice.

Plaintiff claims that Defendants Anderson, LaPonise, and Webb retaliated against him and discriminated against him on the basis of his religious beliefs when they searched his cell and took his tape player and medications. During the search and confiscation, Defendant Anderson stated that Plaintiff should not have written grievances on Defendant Newcomb, and threatened Plaintiff with segregation and the denial of food. Defendant Anderson told Plaintiff, "That's what we do to Muslims." Defendant Anderson wrote a false misconduct on Plaintiff for substance abuse, stating that Plaintiff should not have written grievances on Defendant Newcomb. A misconduct for substance abuse is considered a class I misconduct. MDOC Policy Directive 03.03.105A. The Court concludes that Plaintiff's retaliation and religious discrimination claims against Defendants Anderson, LaPonise, and Webb are not frivolous and may not be dismissed on initial review.

Nor may the Court dismiss Plaintiff's free exercise and religious discrimination claims against Defendants Newcomb, Rink, and Henderson, for their conduct in refusing to allow

12

Plaintiff to pray while he was on his morning break in compliance with prison policy. Finally, the Court notes that Plaintiff's pendent state law claims against Defendants Anderson, LaPonise, Webb, Newcomb, Rink, and Henderson, which assert violations of the Michigan Constitution and Elliot Larson Civil Rights Act, are not properly dismissed at this time.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the federal claims against Defendants Biggers, Bellanger, Gurnoe, Banks, Firth, Pruitt, Horton, Young, Savoie, Durant, and Blemke will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's due process claims regarding the misconduct tickets written by Defendants Anderson and Webb. In addition, the Court will dismiss Plaintiff's state law claims against Defendants Biggers, Bellanger, Gurnoe, Banks, Firth, Pruitt, Horton, Young, Savoie, Durant, and Blemke without prejudice.

Plaintiff's retaliation and religious discrimination claims against Defendants Anderson, LaPonise, and Webb, his free exercise and religious discrimination claims against Defendants Newcomb, Rink, and Henderson, and his state law claims against Defendants Anderson, LaPonise, Webb, Newcomb, Rink, and Henderson remain in the case.

An order consistent with this opinion will be entered.

Dated: July 8, 2019 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE