UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CLEOTIS L. JOHNSON #252308,

        Plaintiff,

v.

SHERRY L. NEWCOMB, et al.,

        Defendants.

_____/

Case No. 2:19-cv-00093

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This is a civil rights action brought by state prisoner Cleotis L. Johnson pursuant to 42 U.S.C. § 1983. Johnson alleges that Defendants refused to allow him to pray during breaks from his work assignment and discriminated against him due to his religious beliefs by searching his cell, confiscating his cassette player and medications, issuing him false retaliatory misconduct tickets, and terminating him from his employment.

The five remaining Defendants in this case – Correctional Officer (CO) Heather Anderson, CO Lorry Webb, CO Sheri Newcomb, Chaplain David Rink, and CO William Henderson – have filed motions for summary judgment. (ECF Nos. 29 and 30.) Johnson has responded. (ECF Nos. 33 and 39.)

Johnson has also filed a motion for judgment on the pleadings (ECF No. 46) and a motion for default judgment against Defendant LaPonise (ECF No. 53.) Defendant LaPonise has not been served with a summons and complaint.

Defendant Newcomb concedes that Johnson exhausted claims against her for denying him prayer time during his work breaks and for terminating him from his employment. (ECF No. 31, PageID.283.) But Defendants argue that Johnson failed to exhaust his administrative remedies on all other claims.

Johnson argues that he exhausted each of his claims by filing grievances against each Defendant and he gave fair notice of the claims against them. Also, Johnson says that MDOC grievance procedures were not properly followed, that he was "thwarted" from filing grievances, that the procedures were too difficult to follow, and that he was threatened for filing grievances.

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF Nos. 29 and 30), and deny Johnson's motion for judgment on the pleadings (ECF No. 46) and a motion for default judgment against Defendant LaPonise (ECF No. 53.) If the Court adopts this recommendation, Johnson's only claim will be against CO Newcomb for alleged violations of the First and Fourteenth Amendments by infringing on Johnson's right engage in religious prayer, retaliating against him for engaging in protected conduct, discriminating against him on the basis of his religion. In addition, Johnson's state law claims under the Michigan

2

Constitution and the Elliot Larson Civil Rights Act remain. (ECF No. 11, PageID.174-75.)

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion

4

procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed

to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id*. at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id*. at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id*. Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id*.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-

7

grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[1], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

---

[1] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Religious discrimination and retaliation for denying prayer during morning break and | Newcomb, Rink, and Henderson | 11-25-2018 and 11-26-2018 |

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| termination from work assignment. | | |
| Retaliatory and discriminatory cell search, confiscation of tape player and medications | Anderson, Webb, and LaPonise | 12-12-2018 |
| False misconduct ticket | Anderson | 12-13-2018 |

## V. Grievances Identified by Defendant(s)

In their motion for summary judgment, Defendants identified four grievances that Johnson filed with MDOC. They claim that a review of these grievances will demonstrate that Johnson failed to exhaust his administrative remedies on each of his claims. Johnson claims that these same grievances exhausted his claims against each Defendant. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-18-12-3722-27z (ECF No. 31-1, PageID.294-298.) | Anderson and Newcomb | False retaliatory misconducts. | 12-15-2018 | Rejected as non-grievable issue that should have been raised during misconduct hearing. | Rejection upheld | Rejection upheld |
| URF-18-12-3723-27z (ECF No. 31-1, PageID.299-303.) | Anderson and Webb | Due process violated by taking cassette player meant to chill right to redress. | 12-18-2018 | Rejected as non-grievable issue that should have been raised during misconduct hearing. | Rejection upheld | Rejection upheld |
| URF-18-11-3363-17d | Newcomb, Firth, | Religious discrimination: | 11-25-2018 | Denied on the merits. | Denied on the merits. | Denied on the merits. |

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| (ECF No. 31-1, PageID.304-308.) | Pruitt, and Dubouis | threatened Johnson while he was praying | | | | |
| URF-18-11-3376-28z (ECF No. 31-1, PageID.309-313.) | Newcomb, Firth, Savoie, and Biggers | Retaliation: Terminated Johnson's employment | 11-26-2018 | Rejected as duplicative of URF-18-11-3363-17d | Rejection upheld | Rejection upheld |

## VI. Misconducts Identified by Defendants

Defendants also identified two misconduct tickets issued to Johnson and attached the hearing reports to their motion. They claim that a review of these documents will demonstrate that Johnson has failed to exhaust his administrative remedies with respect to his claims that these tickets were false and issued for retaliatory reasons. These Misconducts are summarized below.

| Issuing officer | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Appeal |
|---|---|---|---|---|---|
| Issued by Newcomb (ECF No. 31-1, PageID.328-329.) | Class II misconduct ticket for disobeying a direct order | 11-26-2018 | 11-30-2018 | Found guilty. Johnson did not raise a retaliation issue. | Denied on 12-6-18. (ECF No. 1, PageID.17; ECF No. 5-1, PageID.75). |
| Issued by Anderson (ECF No. 31-1, PageID.316-327.) | Class I misconduct ticket for substance abuse | 12-13-2018 | 12-18-2018 | Pleaded guilty. | Did not request a rehearing or seek judicial review. |

## VII. Analysis

Defendant Newcomb concedes that Johnson exhausted two of his claims against her including his claims that she denied Johnson's religious right to engage

11

in prayer in **Grievance URF-18-11-3363-17d** and that she terminated his employment in retaliation and in violation of his religious rights in **Grievance URF-18-11-3376-28z**. (ECF No. 31, PageID.283.)

Defendants argue that Johnson failed to exhaust his claim that Defendant Newcomb issued a false misconduct ticket against him on 11-26-2018 – the Class II misconduct ticket for disobeying a direct order – for retaliatory reason. Defendants correctly assert that Johnson was required to raise that issue at his misconduct hearing or during his appeal.

A review of the records indicates that Johnson never alleged that Newcomb retaliated against him during his misconduct hearing. And, on appeal, Johnson asserted a due process violation and did not raise the retaliation issue. Johnson appealed the misconduct conviction by asserting that his due process rights were violated. His appeal is shown below.

(ECF No. 5-1, PageID.75.)

In the opinion of the undersigned, Johnson failed to properly exhaust claims against each of the other defendants.

Johnson attempted to grieve his retaliation claims against Defendants Anderson, Newcomb, and Webb. However, Johnson's grievances were properly rejected as not grievable and he was instructed to raise the issue of retaliatory misconduct during his misconduct hearing. Raising the issue during a misconduct hearing is the proper way to exhaust administrative remedies when asserting a retaliatory misconduct claim in the MDOC. In the opinion of the undersigned, Johnson failed to properly exhaust his retaliatory misconduct claims.

In addition, Johnson failed to exhaust claims against Defendants Rink and Henderson.[3] Johnson argues that he was thwarted in his attempt to exhaust his administrative remedies by "either incompetence and intentional misconduct" (ECF No. 33, PageID.350), not being provided a proper form, because his grievances were improperly rejected, and that was told to stop filing grievances. (ECF No. 39, PageID.418.) Johnson has failed to point to any grievances that were improperly rejected or provide any explanation as to how his attempts to exhaust his grievance remedies against Defendants Rink or Henderson were thwarted. It appears that Johnson just failed to name Defendants Rink and Henderson in his exhausted grievances on his claim that he was denied the right to pray during his work breaks.

---

[3] Even if Johnson serves Defendant LaPonise with a summons and complaint, Johnson has failed to exhaust a claim against Defendant LaPonise.

Johnson also argues that the grievance procedures are just too hard to follow. (*Id.*) However, Johnson successfully exhausted his grievances against Defendant Newcomb and he has not shown an inability to understand or follow MDOC grievance procedures. Additionally, although Johnson argues that Defendants failed to properly apply the grievance procedures, he fails to identify exactly how the procedures were not followed. (*Id.*)

### VIII. Defendant LaPonise

Johnson filed a motion for judgment on the pleadings or judgment as a matter of law against Defendant LaPonise (ECF No. 46), and a motion for default judgment against Defendant LaPonise. (ECF No. 53.) On September 9, 2019, the Clerk's Office delivered notices of lawsuit and request for waiver of service to the U.S. Marshal's Service that included one for Defendant LaPonise. Defendant LaPonise did not execute the requested waiver of service. (ECF Nos. 20-26.) Despite never serving Defendant LaPonise, Johnson filed his motion for judgment on the pleadings or as a matter of law against Defendant LaPonise on January 23, 2020. (ECF No. 46.) Then on February 20, 2020, Johnson filed his motion for default judgment. (ECF No. 53.) Defendant LaPonise has never been served with a summons and complaint.

On March 5, 2020, the U.S. Marshal Service returned the unexecuted process receipt for Defendant LaPonise. (ECF No. 62.) The MDOC issued a letter dated March 5, 2020, that states: "We cannot identify the Defendant L. LaPonise. We have tried every resource but are unsuccessful, so we are returning the Complaint and Waiver." (*Id.*, PageID.551.)

In the opinion of the undersigned, Johnson's motions for judgment on the pleadings and default judgment should be denied. Defendant LaPonise has never been served with a summons and complaint and the Court does not have jurisdiction to grant Johnson's motions against Defendant LaPonise. Fed. R. Civ. P. 4(c). In addition, default judgment is not appropriate when default has not been entered because a party is unserved. Fed. R. Civ. P. 55. Further, Johnson is not entitled to judgment on the pleadings against Defendant LaPonise. Moreover, even if Johnson served Defendant LaPonise with a summons and complaint, he never exhausted his administrative remedies against Defendant LaPonise.

Finally, because Johnson has failed to properly identify Defendant LaPonise or to provide a proper address to enable the Court to serve Defendant LaPonise, it is recommended that the Court dismiss Defendant Laponise from this action without prejudice. Dismissal of an unserved Defendant without prejudice is appropriate where service was not made within 90 days after the complaint was filed and plaintiff is provided with notice of the dismissal. Fed. R. Civ. P. 4(m).

### IX. Recommendation

The undersigned respectfully recommends that this Court Grant Defendants' motion for summary judgment and dismiss the following:

1. Johnson's false retaliation claim against Defendant Newcomb for the disobeying a direct order misconduct issued on 11-26-2018.

2. Johnson's false retaliation claim against Defendant Anderson for issuance of a substance abuse misconduct on 12-13-2018.

3. Defendants Henderson, Rink, Anderson, and Webb without prejudice due to Johnson's failure to exhaust administrative remedies against them.

4. Dismiss Defendant LaPonise without prejudice under Fed. R. Civ. P. 4(m) due to Johnson's failure to serve a summons and complaint on Defendant LaPonise.

In addition, it is recommended that the Court deny Johnson's motion for judgment on the pleadings or judgment as a matter of law, and for default judgment against Defendant LaPonise.

If the Court adopts this recommendation, the following claims will remain: Johnson's right to engage in religious prayer, his retaliatory and religious discrimination termination from employment claims against Defendant Newcomb under the First and Fourteenth Amendments and his state law claims.

Dated:  May 1, 2020                     /s/ *Maarten Vermaat*
                                        MAARTEN VERMAAT
                                        U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).