UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CLEOTIS JOHNSON #252308,                          Case No.  2:19-cv-00093

        Plaintiff,                               Hon.  Gordon  J.  Quist
                                        U.S. District Judge

    v.

SHERI NEWCOMB, et al.,

        Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendant Corrections Officer (CO) Sheri Newcomb's motion for summary judgment.[1]  (ECF No. 116.)

Plaintiff — state prisoner Cleotis Johnson — filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 1, 2019.  Johnson's verified complaint alleges that some 17 Defendants violated his right to freely exercise his religious beliefs, and that they retaliated against him.  (ECF No. 1.)  Johnson also asserts state law claims under the Michigan Constitution and under the Elliot Larson Civil Rights Act.  (ECF

---

[1]    Plaintiff filed a response and a sur-reply.  (ECF No. 124.)  "It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply." *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted).  The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply.  In this case, Johnson did not seek leave to file his sur-reply before filing it at ECF No. 124. Accordingly, it is recommended that the Court strike Johnson's sur-reply.  (ECF

No. 1, PageID.20, 21, 23, 25.)  The events in this case took place at the Chippewa Correctional Facility (URF).

The Court has since narrowed Johnson's claims substantially.  (*See* ECF No. 10 (screening opinion); ECF No. 11 (Order); ECF No. 94 (Order adopting R&R); ECF No. 102 (Order dismissing Defendant LaPonsie because Johnson failed to serve him).)  At this point, CO Newcomb is the only remaining Defendant.  As an overview, Johnson says that Newcomb unlawfully prevented him from demonstrably praying while he was at work and then retaliated against Johnson by issuing a false misconduct ticket and unfavorable job reports.  Johnson asserts that Newcomb violated his rights under the Free Exercise Clause of the First Amendment, retaliated against him in violation of the First Amendment, violated the Equal Protection Clause of the Fourteenth Amendment, and also violated his rights under the Michigan Constitution and the Elliot Larson Civil Rights Act.  It is important to note that Johnson's retaliation claims against Newcomb do not include an allegation that she wrote a false misconduct ticket against him on November 26, 2018, because the Court dismissed this part of his retaliation claim.  (ECF No. 94, PageID.690.)

Defendant Newcomb now asks the Court to dismiss the remainder of Johnson's claims.  The core of Johnson's claim is his assertion that he has a constitutional right to demonstrably pray while he is at work.  Case law from this district demonstrates that Johnson does not have a right to demonstrably pray while he is at work.  The Michigan Dept. of Corrections (MDOC) may prohibit demonstrable praying in a work setting provided other options are available.  Here,

2

based on MDOC policy, other options were available. Thus, Johnson has not presented evidence creating a genuine issue of material fact on his Free Exercise claim, and the undersigned recommends dismissal of this claim.

However, the undersigned recommends denial of Newcomb's motion with respect to Johnson's Equal Protection Clause and retaliation claims. In his verified complaint, Johnson attributes statements to Newcomb that, if accepted as true, would create a genuine issue of material fact regarding whether Newcomb acted with discriminatory intent and retaliated against Johnson. According, the undersigned recommends that the Court allow these claims to proceed. Finally, the undersigned recommends that this Court decline to exercise supplemental jurisdiction over Johnson's state law claims.

It is respectfully recommended that the Court grant CO Newcomb's motion for summary judgment in part, and deny the motion in part.

## II.    Factual Allegations

Johnson says that on November 25, 2018, he was working in the food service kitchen at URF. (*Id.*, PageID.5.) Johnson says that he was praying while on his break. (*Id.*) CO Newcomb allegedly instructed Johnson to stop praying because she did not like "black Muslims" praying in public. (*Id.*) Johnson says that he tried to explain that he was allowed to pray quietly, but CO Newcomb refused to allow him to continue praying. (*Id.*)

Johnson asserts that when he tried to address the issue with his supervisors, they told him that they accept CO Newcomb's decision. (*Id.*, PageID.6.) CO

3

Newcomb then allegedly told Johnson that he would be "laid in" (presumably suspended) from his work assignment for praying on the job. (*Id.*)

Johnson returned to his work assignment on November 26, 2018, and again began to pray during his break. (*Id.*, PageID.7.) Johnson says that he prayed in full view of the food service staff and his supervisors. (*Id.*)  CO Newcomb instructed Johnson to stop praying and to leave the food service chow hall. (*Id.*) Johnson says that no one in food service interceded on his behalf. (*Id.*)

Johnson asserts that CO Newcomb stated: "I know you wrote a grievance against me, so don't come back to work." (*Id.*, PageID.9.)  Johnson says that CO Newcomb then falsified a misconduct report for disobeying a direct order and she issued a work report indicating that Johnson was a poor performer. (*Id.*) Johnson filed a Prison Rape Elimination Act grievance against CO Newcomb because she "used her personal sexual gender to harass Plaintiff." (*Id.*) Johnson claims that CO Newcomb retaliated against him by issuing the misconduct report. (*Id.*, PageID.9.)

On November 29, 2019, a hearing officer found Johnson guilty of disobeying a direct order. (*Id.*, PageID.10.)  Johnson's appeal was denied. (*Id.*, PageID.11.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

4

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  First Amendment Free Exercise of Religion

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish a violation of his First Amendment rights, Johnson must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Prison officials may impinge on a prisoner's constitutional right to exercise First Amendment religious beliefs if their actions are "reasonably related to

legitimate penological interests." *Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following issues:

> 1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. are there alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").

If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not

a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."  *Id*.  Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest.  *Id*.  "However, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'"  *Id*. at 484 (quoting *Turner*, 482 U.S. at 91.)

As noted above, Johnson alleges that on November 25 and 26, 2018, CO Newcomb violated his right to practice his religious beliefs by preventing him from praying during his work assignment.  It is undisputed that Johnson was engaged in demonstrative prayer at his place of work when Newcomb ordered him to stop.  On November 25, 2018, CO Newcomb was making rounds in the kitchen when she observed Johnson seated on milk crates and bowing forward and back in a rocking motion, with his eyes closed, praying.  (ECF No. 117, PageID.878 (Affidavit of CO Newcomb); *see also* ECF No. 1, PageID.6-7 (Johnson's complaint).)  CO Newcomb states that Johnson was not on his break because all breaks occur in the dining hall.  (ECF No. 117, PageID.878.)  CO Newcomb ordered Johnson to stop praying but he told her that he had the right to engage in prayer.  (*Id*.)  CO Newcomb ordered Johnson to leave the kitchen for the day and return to his unit.  (*Id*.)  Johnson, however, says that he was on break when he was praying.  (ECF No. 119-2, PageID.902.)

The next day, November 26, 2018, CO Newcomb again observed Johnson praying in the kitchen and not performing his work duties.  ((ECF No. 117, PageID.879.)   CO Newcomb ordered Johnson to stop and told him to leave the kitchen and return to his unit.  (*Id.*)  Johnson again alleges that he was on break while praying.  (ECF No. 119-2, PageID.902.)

After each incident, CO Newcomb filled out a Form CSJ-363, which is a Prisoner Program and Work Assignment Evaluation.[2]  (*Id,* PageID.878-79.)  After the second incident, CO Newcomb recommended Johnson's termination from his job assignment[3] and issued him a misconduct ticket for disobeying a direct order.  (*Id.*)  As a starting point, the undersigned notes that the United States Supreme Court has held that a prison policy that prevented prisoners on work assignment from being released to attend Jumu'ah services on Fridays was reasonably related to legitimate penological interests.  *O'Lone*, 482 U.S. at 351.  Furthermore, cases from this district demonstrate that an MDOC official may prohibit a prisoner from engaging in demonstrative prayer while the prisoner is on work detail.  *See Board v. Weston*, 2:19-cv-151, 2019 WL 3955678, *5-6 (W.D. Mich. Aug. 22, 2019) (stating that "established case law does not support [prisoner's] claim that a prison's work policy that prevents Plaintiff from making demonstrative prayers during work and from

---

[2]   The CSJ-363 written by Newcomb on November 25, 2018 is included in ECF No. 119-3, PageID.904.  This form indicates that Newcomb recommended a "30 day conditional."  The parties did not provide the Court with the CSJ-363 written by Newcomb on November 26, 2018.

[3]   The Classification Director terminated Johnson from his job assignment on December 4, 2018.  (ECF No. 117, PageID.880.)

leaving work to make those prayers violated the Free Exercise Clause"); *see also Williams v. Sec'y Pennsylvania Dep't of Corr.*, 450 F. App'x 191, 195 (3d Cir. 2011) (affirming district court's decision to grant summary judgment in favor of prison employee because plaintiff-prisoner did not have a right to pray in kitchen area).

In *Cameron v. Newcomb*, W.D. Mich. Case No. 2:19-cv-71, this Court again addressed the issue of demonstrative prayer while on a work assignment:

> the MDOC policy prohibiting prisoners from engaging in public prayer in common areas while they are on work assignment furthers the legitimate penological objectives of maintaining safety, good order, and security of the prison, prisoners, and staff. The MDOC has set forth alternatives to accommodate those prisoners who wish to be released from work to practice their religious beliefs. (ECF No. 29-6, PageID.210, Policy Directive 05.03.150 AA.) In addition, a prisoner may pray silently (as opposed to in a demonstrative manner) or while he is in attendance at group services, or he could wait until he returns to his cell. As set forth by the Court's decision in *Board* and the case law cited in *Board*, it is the opinion of the undersigned, that Defendant Newcomb **did not violate Cameron's First Amendment rights by enforcing the prison rule that disallows prayer during the time that a prisoner is at his job assignment**.

*Cameron*, 2020 WL 7264968, at *8 (W.D. Mich. Nov. 16, 2020) (emphasis added) (collecting cases), *report and recommendation adopted,* No. 2:19-CV-71, 2020 WL 7263379 (W.D. Mich. Dec. 10, 2020).  Thus, this Court has previously found that restrictions on demonstrative prayer in the workplace are constitutional.[4]

Furthermore, an analysis of the *Turner v. Safley* factors confirms that Newcomb is entitled to summary judgment on Johnson's Free Exercise claim.  First,

---

[4]    Defendant Newcomb was also the defendant in *Cameron v. Newcomb*, No. 2:19-CV-00071, 2020 WL 7264968 (W.D. Mich. Nov. 16, 2020), *report and recommendation adopted*, No. 2:19-CV-71, 2020 WL 7263379 (W.D. Mich. Dec. 10, 2020).

MDOC policy does provide a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.   MDOC Policy Directive 05.03.150 (ECF No. 116-5) allows prisoners to practice their religious beliefs "within the constraints necessary for the safety, security, and good order of the facility."  The Policy Statement provides:

> Religious freedom is a constitutionally guaranteed right.  All recognized religions enjoy equal status and protection, subject to those limitations necessary to maintain the safety, good order and security of the facility, including the health and safety of prisoners and staff.

*Id.*, PageID.792 (¶ A).)   And this MDOC policy accommodates religious practices subject to limitations.

> Prisoners may be released from work or school assignments to attend group religious services and approved holy day observances.  However, prisoners shall not be released to attend other religious activities.  A prisoner must submit a written request to the Warden or designee to be released from his/her work or school assignment at least 15 calendar days prior to the service or holy day observance.  Prisoners released from a work or school assignment to attend group religious services or holy day observances will not be paid for their absence from the assignment.   Prisoners shall not return to the assignment at the conclusion of the group religious service or holy day observance unless specifically requested to do so by the work or school supervisor.

*Id.* ¶ AA.

This Policy Directive does not explicitly state that prisoners may not pray at work.  But this Policy Directive does limit when and how a prisoner may be released to participate in religious activities.  As Defendant observes, "if a prisoner must be released from their work assigned to practice religious services, they are not allowed to practice during their work." (ECF No. 116, PageID.750.)

Thus, CO Newcomb's decision to prevent Johnson from demonstrably praying during his job assignment was consistent with MDOC policy.  MDOC has a legitimate interest in disallowing prisoners from demonstrably praying while they are on a job assignment.  *Board*, 2019 WL 3955678, *7.  And, as Defendant Newcomb explained, if the prison allowed prisoners to stop their work assignment by taking unauthorized breaks to pray, correction officers would lose authority over the prison population.  (ECF No. 117, PageID.880 (Affidavit of CO Newcomb).)  Furthermore, the prison kitchen or chow hall serves hundreds of prisoners.  (*Id.*)  And while Johnson was taking time off his job duties to pray, no one was fulfilling his assigned job duties.  (*Id.*)

In addition, as to the second *Turner v. Safley* factor, the MDOC provides prisoners with alternative means to exercise their religious rights.  As stated above, MDOC Policy Directive 05.03.150, ¶ AA, allows prisoners to be released from their work assignments to attend group religious services and approved holy day observances.  (ECF No. 116-5, PageID.795.)

Furthermore, regarding the third *Turner v. Safley* factor, the impact on the guards and staff of allowing prisoners to engage in demonstrative prayer while on their job assignment could have a negative impact on the security and efficiency of prison operations.  (ECF No. 117, PageID.880.)

And finally, on the fourth factor, there do not appear to be ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests prisoners.

11

Johnson's claim has been litigated before in this Court.  He has failed to provide the Court with evidence that creates a genuine issue of material fact regarding his First Amendment Free Exercise claim.

## V.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

Johnson argues that CO Newcomb violated the Fourteenth Amendment Equal Protection Clause by refusing to allow him to demonstrably pray while he was assigned to his work duties.  Newcomb asserts (1) that Johnson cannot show discriminatory purpose because Newcomb's actions – ordering Johnson to stop praying – were authorized, and (2) that Johnson has failed to allege or show that he was treated differently from other, similarly situation persons.  (ECF No. 116, PageID.757.)

The undersigned concludes that Newcomb is correct on her second point.  To establish a cognizable equal protection claim, a plaintiff must show "that [he was] 'intentionally singled out by the government for discriminatory adverse treatment.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 905 (6th Cir. 2019) (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005)).  Here, Johnson has not set forth evidence showing that other, similarly situated persons

were treated differently.  In this case, Johnson could likely make this showing by presenting evidence that prisoners of different races or religions were allowed to pray in the work area.  He has not made this showing.

This conclusion, however, does not end the inquiry.  A Section 1983 plaintiff making a claim under the Equal Protection Clause must allege that a state actor "intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).  The Eastern District of Michigan recently explained the principles underlying the Equal Protection Clause as follows:

> The Equal Protection Clause prohibits only intentional discrimination. *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). To establish intentional discrimination, a showing must be made that the state official acted with the purpose of creating an adverse impact on an identifiable group—not simply with an awareness that adverse consequences would result from the state action:
>> "Discriminatory purpose" ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

*Ryan v. City of Detroit*, 174 F.Supp.3d 964, 971 (E.D. Mich. 2016) (citation omitted).

Newcomb says Johnson's equal protection claim fails because he cannot show that the complained-of actions, being ordered to stop praying and being laid in from his job (i.e., suspended), were done for a discriminatory purpose.  Johnson, however, alleges that Newcomb stated that she did not approve of praying by "Black Muslims" in the mess hall.  (ECF No. 1, PageID.5.)  In fact, Johnson states that Newcomb said he must "stop praying because Black Muslims are not allowed to pray in public, or

public buildings." In *Ryan*, the district court observed that "without the proverbial 'smoking gun of an overtly discriminatory statement by a decisionmaker, it may be very difficult to offer sufficient proof of' discriminatory purpose." 174 F.Supp.3d at 971. (quoting *Soto v. Flores,* 103 F.3d 1056, 1067 (1st Cir.1997)). The statement that Johnson attributes to Newcomb in his verified complaint, which the Court must credit at this stage, obviously reflects a discriminatory intent. The implication of this statement is that Newcomb applied the no-praying-on-the-job rule to specific racial and religious groups, rather than uniformly to all. Thus, in the opinion of the undersigned, Johnson has asserted facts that create a genuine issue of material fact as to his equal protection claim.

It is respectfully recommended that the Court deny Newcomb's motion with respect to Johnson's Equal Protection Clause claims

## VI. Retaliation

Johnson claims that CO Newcomb retaliated against him by recommending his termination from his job assignment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "If the grievances are frivolous, however, this right is not protected." *Id.* Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith*, 250 F.3d at 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Johnson has asserted two ways that he engaged in protected conduct.  First, Johnson says that he engaged in protected conduct by praying during his kitchen job assignment.  Second, Johnson says that the grievance he filed on November 26, 2018, against Defendant Newcomb for barring his prayer during his job assignment is protected conduct.  (ECF No. 31-1, PageID.307 (Step I grievance).)

Because Johnson cannot demonstrably pray during his kitchen job assignment, he cannot assert that engaging in demonstrable prayer during his job assignment is protected conduct.  Relatedly, Johnson could not file a grievance challenging the MDOC policy on praying and religious activities because such a grievance would constitute a complaint about the content of a policy, which, pursuant to MDOC Policy Directive 03.02.130, ¶ J, would be non-grievable and subject to rejection on that ground.  But, here, Johnson's grievance asserts that Newcomb's order to him was made for personal reasons rather than as a matter of policy.  Thus, his grievance is arguably protected conduct, which creates a genuine issue of material fact on the first element of the retaliation claim.

In the opinion of the undersigned, a genuine issue of fact also remains as to the question of whether CO Newcomb was involved in terminating Johnson's employment.  CO Newcomb concedes that she wrote a CSJ-363 after the November 26 praying incident that recommended that Johnson be terminated.  (*See* ECF No. 117, PageID.879.)  CO Newcomb did not attach the second CSJ-363 form to her motion for summary judgment and that form is not in the record.  But her recommendation likely would be sufficient to establish a genuine issue of material

16

fact as to the adverse action element of Johnson's retaliation claim.

Newcomb also argues that the timing of Johnson's grievance undercuts any possible causal connection between his grievance and the CSJ-363s filed by Newcomb. The undersigned disagrees. Newcomb's first CSJ-363 is dated November 25, 2018. (ECF No. 119-3, PageID.904.) This form, which recommended "30 day conditional", was completed after the first praying incident but before Johnson's first grievance, which is dated November 26, 2018 (ECF No. ECF No. 31-1, PageID.307.)

According to her affidavit, CO Newcomb issued her second CSJ-363 form with the recommendation to terminate Johnson's employment on November 26, 2018. (ECF No. 117, PageID.879.) Based on these dates, Newcomb could have written the latter CSJ-363 after she found Johnson praying and after he wrote his grievance. In addition, the statement that Johnson attributes to Newcomb (see ECF No. 1, PageID.5) provide additional evidence of a causal connection between the alleged protected conduct and adverse action. Accordingly, a genuine issue of fact remains with regard to the causal connection element as well.

It is respectfully recommended that the Court deny Newcomb's motion with respect to Johnson's retaliation claims.

### III.    Qualified Immunity

As an alternative argument, Defendants move for dismissal on qualified immunity grounds. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The analysis entails a two-step inquiry.   *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).   First, the court must "determine if the facts alleged make out a violation of a constitutional right."   *Id.*   (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).   Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."   *Id.* (citing *Pearson*, 555 U.S. at 232).   A court may address these steps in any order.   *Id.* (citing *Pearson*, 555 U.S. at 236).   A government official is entitled to qualified immunity if either step of the analysis is not satisfied.   *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.   *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The court considers the state of the law at the second step.   As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or

constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017)

(internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*,

136 S. Ct.  305, 308 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear
> foundation in then-existing precedent. The rule must be "settled law,"
> *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589
> (1991) (per curiam), which means it is dictated by "controlling authority"
> or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*,
> *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S.
> 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that
> the rule is suggested by then-existing precedent. The precedent must be
> clear enough that every reasonable official would interpret it to establish
> the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at
> 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every
> reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal
> quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle
> clearly prohibit the officer's conduct in the particular circumstances
> before him. The rule's contours must be so well defined that it is "clear
> to a reasonable officer that his conduct was unlawful in the situation he
> confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150
> L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix
> v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015)
> (per curiam). We have repeatedly stressed that courts must not "define
> clearly established law at a high level of generality, since doing so avoids
> the crucial question whether the official acted reasonably in the
> particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023
> (internal quotation marks and citation omitted). A rule is too general if
> the unlawfulness of the officer's conduct "does not follow immediately
> from the conclusion that [the rule] was firmly established." *Anderson*,
> *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the
> rule must obviously resolve "whether 'the circumstances with which [the
> particular officer] was confronted ... constitute[d] probable cause.'"
> *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct.
> 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

The undersigned concludes that Johnson failed to establish a genuine issue of material fact showing that CO Newcomb violated his First Amendment Free Exercise rights.  In fact, as noted above, this Court has previously granted summary judgment in Newcomb's favor on a First Amendment Free Exercise claim that is very similar to the claim in this this case.  *See Cameron v. Newcomb*, No. 2:19-CV-00071, 2020 WL 7264968, at *8 (W.D. Mich. Nov. 16, 2020), *report and recommendation adopted*, No. 2:19-CV-71, 2020 WL 7263379 (W.D. Mich. Dec. 10, 2020) ("As set forth by the Court's decision in *Board* and the case law cited in *Board*, it is the opinion of the undersigned, that Defendant Newcomb did not violated Cameron's First Amendment rights by enforcing the prison rule that disallows prayer during the time that a prisoner is at his job assignment").  But, genuine issues of material fact remain with respect to Newcomb's Equal Protection and Retaliation claims.  In the view of the undersigned, those claims cannot be dismissed based on qualified immunity.

As a result, it is recommended that the Court conclude that Johnson's First Amendment Free Exercise claim is barred by qualified immunity

## VIII.   State Law claims

Johnson asserts state law claims under the Michigan Constitution and under the Elliot Larson Civil Rights Act.  (ECF No. 1, PageID.24.)

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Plaintiff, however, seeks to invoke this Court's supplemental jurisdiction over state-law claims.  In determining whether to retain supplemental

jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Pursuant to 28 U.S.C. § 1367(c)(2), the Court may decline to exercise supplemental jurisdiction over a claim that would substantially predominate over the federal claims in the case. Here, the federal claims will be narrowly focused on a narrow band of facts relating to (1) whether Newcomb actually said "Black Muslims" are prohibited from praying, and (2) whether she then acted on that the intent reflected in that statement. The undersigned concludes that larger question about the application of Johnson's rights under the Michigan Constitution or the Elliot Larson Civil Rights Act would substantially predominate over the federal Equal Protection and retaliation claims in the case. For this reason, it is respectfully recommended that the Court decline to exercise supplemental jurisdiction over the state law claims.

## IX. Recommendation

It is respectfully recommended that the Court conclude that no genuine issue of fact exists to support Johnson's free exercise of religion and grant Newcomb's motion with respect to that claim. But the undersigned recommends denying Newcomb's motion as to Johnson's equal protection, and retaliation claims. In addition, the undersigned recommends dismissal of the state-law claims.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen

(14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C);

Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections

constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  August 16, 2022                                    /s/ *Maarten Vermaat*
                                                           MAARTEN VERMAAT
                                                           U.S. MAGISTRATE JUDGE